**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **ROBERT ECKERMAN** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:07-00627** |
| | ) | **Judge John T. Nixon** |
| **TENNESSEE DEPARTMENT OF SAFETY, an agency of the State of Tennessee; FORMER DEPARTMENT OF SAFETY COMMISSIONER GERALD NICELY, in his individual and official capacities; COLONEL MIKE WALKER OF THE TENNESSEE HIGHWAY PATROL, in his individual and official capacities; DANNY WILSON, LIEUTENANT COLONEL OF THE TENNESSEE HIGHWAY PATROL, in his individual and official capacities; CAPTAIN GEORGE DITTFORTH OF THE TENNESSEE HIGHWAY PATROL, in his individual and official capacities; JOHN SAVAGE, A MAJOR WITH THE TENNESSEE HIGHWAY PATROL, in his individual and official capacities; WAYNE SPRINGER, A MAJOR WITH THE TENNESSEE HIGHWAY PATROL, in his individual and official capacities; FRANKIE FLOYD, A CRIMINAL INVESTIGATOR WITH THE TENNESSEE HIGHWAY PATROL, in his individual and official capacities; DAN HOLLIS, A CRIMINAL INVESTIGATOR WITH THE TENNESSEE HIGHWAY PATROL, in his individual and official capacities,** | ) | **Magistrate Judge John S. Bryant** |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM ORDER**

Pending before the court are the Summary Judgment Motions of: Defendant Tennessee

Department of Safety; Defendant Former Department of Safety Commissioner Gerald Nicely; Defendant Colonel Mike Walker of the Tennessee Highway Patrol; Defendant Danny Wilson, Lieutenant Colonel of the Tennessee Highway Patrol; Defendant Captain George Dittforth of the Tennessee Highway Patrol; Defendant John Savage, a Major with the Tennessee Highway Patrol; Defendant Wayne Springer, a Major with the Tennessee Highway Patrol; Defendant Frankie Floyd, a Criminal Investigator with the Tennessee Highway Patrol; and Defendant Dan Hollis, a Criminal Investigator with the Tennessee Highway Patrol (collectively, the "Defendants") ("Defendants' Motions") (Doc. Nos. 35-43), filed with a supporting Memorandum (Doc. No. 45) and Statement of Facts (Doc. No. 44). Plaintiff Robert Eckerman ("Eckerman") has filed a Response in Opposition (Doc. No. 55), Memorandum in Support (Doc. No. 56), Statement of Additional Facts (Doc. No. 57), Response to Defendants' Joint Statement of Facts (Doc. No. 58), Joint Compilation (Doc. No. 59), Affidavit (Doc. No. 60), and Additional Exhibits (Doc. No. 61). Defendants submitted a Reply (Doc. No. 63), Response to Plaintiff's Statement of Additional Facts (Doc. No. 64), and Supplemental Legal Citations (Doc. No. 67). For the reasons stated herein, the Court thereby **GRANTS** Defendants' Motions.

## I. BACKGROUND

### *A. Procedural History*

On August 13, 2007, Eckerman filed an Amended Complaint against the Defendants under 42 U.S.C. §§ 1983 and 1985 (Doc. No. 13). Eckerman alleged that Defendants violated the First and Fourteenth Amendments by retaliating against him based upon his political affiliation and filing of a federal lawsuit. Additionally, Eckerman alleges that the Defendants conspired to violate his

rights. In response, the Defendants filed these Motions for Summary Judgment asserting qualified immunity for the individual capacity claims and Eleventh Amendment sovereign immunity for the official capacity claims. Defendants also argue that the conspiracy claim is barred by the intra-corporate conspiracy doctrine. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.

*B. Factual History*[1]

Eckerman has been an employee of the Tennessee Highway Patrol ("THP"), a division of the Tennessee Department of Safety, since 1984. He first served as a Trooper in the Clarksville, Tennessee area. Throughout his law enforcement career, Eckerman received assignments to various security details, including the inaugurations of both Governor Sundquist in January 1995 and Governor Bredesen in January 2003. In 1995, Eckerman was promoted to the rank of lieutenant while serving as a staff member at the THP headquarters.

Prior to the present action, on May 16, 2006, Eckerman filed a federal complaint alleging a violation of his civil rights. Specifically, Eckerman claimed adverse treatment because of his political affiliation with the Republican Party. Eventually, Eckerman stipulated to the dismissal of the case with prejudice.

On October 2, 2006, the THP began a two-week interview period evaluating candidates for trooper positions. Three-person teams consisting of a lieutenant, a sergeant, and a trooper conducted the interviews. Each team member ranked candidate's responses to the questions on a document known as a "protocol." At the end of the interview sessions, the team sent the protocol

[1] Unless otherwise noted, all facts in this section are undisputed and are taken from Plaintiff's Response to Defendants' Joint Statement of Undisputed Material Facts in Support of Motions for Summary Judgment (Doc. No. 58) and Joint Response to the Plaintiff's Statement of Additional Facts of the Tennessee Department of Safety, et al. (Doc. No. 64).

sheets to the THP Human Resources to be entered into a candidate database.

On October 10, 2006, Major John Savage ("Defendant Savage") received information that individuals in the THP made allegations against Lieutenant Colonel Danny Wilson ("Defendant Wilson") concerning the protocols. The allegations claimed Defendant Wilson attempted to influence the protocol interview process in favor of African-American applicants. Upon approval from Colonel Mike Walker ("Defendant Walker"), Defendant Savage initiated an investigation into the protocol allegations. Defendant Walker advised Gerald Nicely ("Defendant Nicely"), former Commissioner of the Department of Safety, of the allegations against Defendant Wilson.

Defendant Savage received assistance in the protocol investigation from Captain George Dittforth ("Defendant Dittforth"), Frankie Floyd ("Defendant Floyd," also referred to as "Floied"), and Dan Hollis ("Defendant Hollis"). As the protocol investigation progressed, Eckerman was interviewed to determine his involvement, if any. The Summary Report of Internal Affairs Investigation ("Summary Report"), issued November 16, 2006, detailed the investigation of Eckerman. According to the Summary Report, Eckerman, while on vacation in Michigan in early October, spoke with various THP officers concerning the protocol incident. Eckerman had no assigned role in the applicant interview process; yet the Summary Report stated that he spoke with several THP members after the fact.

The trooper protocol investigation eventually revealed that Defendant Wilson engaged in no wrongdoing. However, based upon this investigation, Defendants Dittfurth, Hollis, and Floyd found that Eckerman's actions in response to the trooper protocol violated several THP General Orders. Defendant Walker recommended to Defendant Nicely that Eckerman be demoted from lieutenant to sergeant for four specific violations: (1) "playing a role in spreading malicious allegations

concerning Lieutenant Colonel Danny Wilson;" (2) "failing to notify [Eckerman's] supervisors about the allegations concerning Lieutenant Colonel Danny Wilson;" (3) "conducting an unauthorized investigation into the allegations concerning Lieutenant Colonel Danny Wilson;" and (4) "failing to answer questions during the Internal Affairs investigation." (Doc. No. 61, Exhibit W at 2). Defendant Nicely initiated a disciplinary proceeding against Eckerman on December 6, 2006. Eckerman was demoted. He then appealed that decision to the Tennessee Civil Service Commission. On March 11, 2008, the Administrative Law Judge reversed the THP's demotion, finding the decision to be "improper." Eckerman was reinstated to the rank of lieutenant on April 1, 2008.

During the week of June 16, 2008, Eckerman received notification of the elimination of his position within the Criminal Investigation Division. Other jobs, including that of Defendant Dittfurth, were also proposed to be abolished. Despite the departmental cutbacks, Eckerman claimed Defendant Walker and Dave Mitchell, the Commissioner of the Tennessee Department of Safety, assured him that his position "was not going to go away."

Since becoming a member of the THP, Eckerman has consistently voted as a Republican in Tennessee's gubernatorial elections. He supported Don Sundquist, the Republican candidate for Governor, in both the 1994 and 1998 gubernatorial elections. Eckerman contributed money, attended rallies, put up a yard sign, and placed a Sundquist bumper sticker on his car. Eckerman also supported Jim Bryson as the Republican candidate in the 2006 gubernatorial election.

In this action, Eckerman claims retaliation for his political affiliation with the Republican Party and the filing of his previous federal lawsuit. In specific, he asserts the following adverse employment actions against him: (1) demotion from lieutenant to sergeant; (2) assignment transfer

to the Robertson County Scales in March 2007; (3) denial of various requests to transfer from the Robertson County Scales; (4) assignment of tasks inappropriate for a state trooper; (5) failure of the THP and the Department of Safety to take appropriate action regarding numerous grievances and complaints; (6) issuance of a written reprimand for conduct that amounts to following the THP's General Orders; and (7) reduction in supervision and law enforcement authority normally associated with the rank of lieutenant.

Eckerman brings this action under 42 U.S.C. §§ 1983 and 1985. He alleges, inter alia, that other lieutenants received preferable assignments based upon their political affiliation and that a retaliatory conspiracy by Defendants drove the trooper protocol investigation against him. Eckerman further alleges that these adverse actions occurred after the filing of his prior federal lawsuit. Eckerman seeks injunctive relief, compensatory damages, and costs, including attorney fees under 42 U.S.C. § 1988.

## II. STANDARD OF REVIEW

Summary judgment is rendered when "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party must demonstrate that the non-moving party has failed to establish a necessary element of that party's claim. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment will be granted if "the evidence is so one-sided that one party must prevail as a matter of law." Lexington-South Elkhorn Water Dist. v. City of Wilmore, 93 F.3d 230, 233 (6th Cir. 1996). The movant has the initial burden of informing the district court of the basis of the summary judgment motion and identifying portions of the record which lack a genuine issue of material fact to support the non-

movant's case. See Celotex, 477 U.S. at 323.

The non-moving party may not rest solely on the allegations in the complaint, but must delineate specific evidence that shows there is a genuine issue for trial. See id. at 324. A "mere possibility" of a factual dispute is not sufficient to withstand a properly supported motion for summary judgment. Baird v. NHP Mill Creek Apartments, 94 F. App'x 328, 330-31 (6th Cir. 2004) (quoting Gregg v. Allen-Bradley Co., 801 F.2d 859, 863 (6th Cir. 1986)). The non-moving party must show more than "some metaphysical doubt as to the material facts." Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)). Furthermore, a dispute about a material fact is genuine if a reasonable factfinder could find for the non-moving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).

All reasonable inferences are to be drawn in favor of the non-moving party and the evidence of the non-movant is to be believed. Id. at 254. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . on a motion for summary judgment." Id. If the court determines that a reasonable factfinder would not find for the non-moving party, summary judgment must be granted. See Matsushita, 475 U.S. at 249-50.

## III. Discussion

### *A. Conspiracy*

Eckerman does not oppose summary judgment on his 42 U.S.C. § 1985 cause of action for conspiracy. (See Doc. No. 55, at 22). Therefore, the court **GRANTS** the Defendants' Motion for Summary Judgment on the conspiracy claim.

*B. Retaliation*

To establish a violation of a constitutional right, Eckerman must prove that the Defendants retaliated against him for engaging in a protected activity. Specifically, the plaintiff in a retaliation claim has the burden of proving the following three elements: (1) constitutionally-protected conduct; (2) an adverse action by Defendants sufficient to deter a person of ordinary firmness from continuing to engage in that conduct; and (3) a causal connection between the first and second elements. Sowards v. Loudon County, 203 F.3d 426, 431 (6th Cir. 2000). In other words, the protected conduct must have, at least in part, motivated the adverse action. Id. If Eckerman meets his burden of establishing retaliation, then the burden shifts to the Defendants "to prove by a preponderance of the evidence that the employment decision would have been the same absent the protected conduct." Id. (citing Kreuzer v. Brown, 128 F.3d 359, 363 (6th Cir. 1997)).

1. Protected Conduct

Eckerman argues that his First Amendment right of political association and right to file a lawsuit constitute protected activity. "The right of political association is a well established right under the First Amendment for 'political belief and association constitute the core of those activities protected by the First Amendment.'" Sowards, 203 F.3d at 432 (citing Rutan v. Republican Party of Ill., 497 U.S. 62, 69 (1990)). Eckerman publically supported various Republican gubernatorial candidates over the years, contributing money, attending rallies, putting up a yard sign, and placing a candidate's bumper sticker on his personal vehicle. These political activities qualify as protected activity under the First Amendment right of political association. For the purposes of summary judgment only, Defendants admit that Plaintiff's political affiliation with the Republican Party is a protected activity under the First Amendment of the United States Constitution. (Doc. No. 45, at

15).

Eckerman also argues that he suffered retaliation for filing a prior federal lawsuit. Over a year before the instant action, Eckerman filed a federal civil rights case against the Tennessee Department of Safety and other THP employees, none of whom are named defendants here. The First Amendment protects the right to "petition the Government for redress of grievances." Gaspers v. Ohio Dep't. of Youth Servs., No. C-1-06-832, 2009 U.S. Dist. LEXIS 47845, at *53-54 (S.D. Ohio June 8, 2009) (citing Nicholson v. City of Westlake, 76 F. App'x, 626, 628 (6th Cir. 2003)). The First Amendment extends to this conduct because filing a federal lawsuit "is fundamental to 'the very idea of a government, republican in form.'" Wilkinson v. United States, 365 U.S. 399, 427 (1961) (quoting United States v. Cruikshank, 92 U.S. 542, 552 (1875)). For the purposes of summary judgment only, Defendants admit that Plaintiff's prior federal lawsuit is a protected activity under the First Amendment of the United States Constitution. (Doc. No. 45, at 15).

2. Adverse Actions

An employment action is adverse if it would "'deter a person of ordinary firmness' from the exercise of the right at stake." Fritz v. Charter Township of Comstock, No. 1:07-CV-1254, 2008 U.S. Dist. LEXIS 96420, at *6 (W.D. Mich. Nov. 26, 2008) (quoting Thaddeus-X v. Blatter, 175 F.3d 378, 396 (6th Cir. 1999)). Only employment decisions that are ultimate in nature, "such as hires, firings, promotions, and demotions, can be [deemed] materially adverse." Gates v. Potter, No. 3:07CV-667-H, 2009 U.S. Dist. LEXIS 50941, at *5 (W.D. Ky. June 10, 2009). In Gates, the plaintiff filed a racial discrimination suit against the United States Postal Service. The plaintiff claimed that her requests to change work shifts were denied because she was an African American. The Gates court rejected plaintiff's argument that the denial of a request to change shifts was a

materially adverse employment decision. Id. at 5-6 ("A [work shift] change (or in this case, the denial of a request for a [work shift] change) does not qualify as a demotion . . . . Regardless, to change an employee's work schedule, falls far short of an adverse action under Sixth Circuit cases."). A plaintiff has met the burden of establishing an adverse employment action if there has been a "materially adverse change in the terms and conditions of . . . employment." Hollins v. Atlantic Co., 188 F.3d 652, 662 (6th Cir. 1999) (quoting Crady v. Liberty Nat'l Bank & Trust Co. of Ind., 993 F.2d 132, 136 (7th Cir. 1993)).

Eckerman alleges that multiple employment decisions by Defendants amount to adverse actions. These employment decisions include: (1) his demotion from lieutenant to sergeant; (2) his assignment transfer to the Robertson County Scales in March 2007; (3) the denial of various requests to transfer from Robertson County Scales; (4) the assignment of tasks inappropriate for a state trooper; (5) the failure of the THP and the Department of Safety to take appropriate action regarding numerous grievances and complaints; (6) the issuance of a written reprimand for conduct that amounts to following the THP's General Orders; and (7) the reduction in supervision and law enforcement authority normally associated with the rank of lieutenant. (Doc. No. 58, at 27-28).

Eckerman's demotion from lieutenant to sergeant qualifies as an adverse action under Sixth Circuit precedent. See Fritz, 2009 U.S. Dist. LEXIS 96420, at *6. As for the assignment transfer to the Robertson County Scales and denial of request to transfer from the scales, as explained in Gates, a denial of a request to transfer does not rise to the level of an adverse employment action. 2009 U.S. Dist. LEXIS 50941, at *5-6. Regarding the task assignments and reduction in supervision and authority, Defendants' actions must "constitute[ ] a *significant* change in [Eckerman's] employment status." White v. Burlington N. & Santa Fe Ry. Co., 364 F.3d 789, 798 (6th Cir. 2004) (emphasis

added). The change of job responsibilities does not automatically rise to the level of being materially adverse. Id. at 797. Furthermore, neither the failure of THP and the Department of Safety to respond to complaints, nor the written reprimand, constitute a significant change in employment status. If every decision that an employee considers unfavorable may be deemed materially adverse, then constitutional violations will be triggered by any trivial workplace decision. See Primes v. Reno, 190 F.3d 765, 767 (6th Cir. 1999) ("If every low evaluation or other action by an employer that makes an employee unhappy or resentful were considered an adverse action, Title VII would be triggered by supervisor criticism or even facial expressions indicating displeasure."). Except for the demotion, Eckerman has failed to show that Defendants' actions were materially adverse. Therefore the Court will examine causal connection for the potential retaliatory action of the demotion only.

3. Causal Connection

In order to establish causal connection, Eckerman must produce enough evidence to create the inference that the adverse action would not have taken place if he had not engaged in the protected activities. See Hill v. Airtran Airways, Inc., No. 3:08-cv-195, 2009 U.S. Dist. Lexis 51827, at *27 (S.D. Ohio June 19, 2009) (noting that to show causal connection "a plaintiff must produce sufficient evidence from which an inference could be drawn" that the adverse employment action would not have taken place if the plaintiff did not engage in the protected conduct). Plaintiff bears the burden of showing the protected activity motivated the adverse action. Sowards v. Loudon County, 203 F.3d 426, 433-34 (6th Cir. 2000) (citing Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999) (en banc)).

To survive the Defendants' Motion for Summary Judgment, Eckerman must allege facts

sufficient to create a genuine issue regarding his claim that his political affiliation with the Republican Party and the filing of the previous lawsuit motivated his demotion from lieutenant to sergeant. The temporal proximity between engaging in the protected activity and suffering from the adverse employment action is one way to establish a causal connection. Van Richardson v. Burrows, 885 F. Supp. 1017, 1023 (N.D. Ohio 1995). Although not dispositive, temporal proximity considered with other evidence may prove retaliation. Nguyen v. City of Cleveland, 229 F.3d 559, 566 (6th Cir. 2000). If Eckerman meets the causation burden, then the burden shifts to the Defendants to show, by a preponderance of the evidence, that the adverse action would have occurred absent the protected activities. Sowards, 203 F.3d at 431 (citing Kreuzer v. Brown, 128 F.3d 359, 363 (6th Cir. 1997)).

In Nguyen, the Sixth Circuit held that the plaintiff failed to establish a retaliation claim because he did not present sufficient evidence from which a jury could infer that the adverse employment action was substantially motivated by the protected activity. 229 F.3d at 567. Nguyen brought suit against the City of Cleveland for failure to promote based upon his filing of grievances with the Equal Employment Opportunity Commission ("EEOC"), a protected activity. On appeal from the district court's decision, Nguyen asserted that the temporal proximity between the filing of the grievances and the failure to promote, on its own, sufficiently established causation for the retaliation claim. Id. at 565. However, the Sixth Circuit rejected Nguyen's interpretation of the requirements of causation. See Parnell v. West, No. 95-2131, 1997 WL 271751, at *2 (6th Cir. May 21, 1997) ("a causal link can be shown by either of two methods: (1) through direct evidence; or (2) through knowledge coupled with a closeness in time that creates an inference of causation . . . . However, temporal proximity alone will not support an inference of retaliatory discrimination when

there is no other compelling evidence"). Temporal proximity must be coupled with other compelling evidence to establish causal connection. Nguyen's retaliation claim failed because he did not produce additional evidence from which retaliation for filing the EEOC grievances could be inferred. Id. at 567. Similarly, here Plaintiff must show some evidence beyond mere temporal proximity to support his causation claim.

Eckerman argues that direct evidence of retaliatory actions is difficult to obtain and that he cannot here give direct evidence that Defendants demoted him because of his political affiliation. (Doc. No. 56, at 17). Rather he argues that because of his exceptional employment record at THP, his demotion must have been retaliatory. Eckerman asserts that in previous performance evaluations, he was described as being "exceptional in all major areas" of his job. (Doc. No. 60, Ex. K, at 2). One superior officer also noted that Eckerman was "an outstanding individual and supervisor." Id. Thus, Eckerman maintains that the only basis for this adverse employment action was his political affiliation and the filing of a previous federal lawsuit.

Eckerman has the burden to show that his political affiliation with the Republican Party motivated the demotion. Eckerman supported various Republican candidates while employed at the THP.[2] He contributed money, attended rallies, put up a yard sign, and placed a bumper sticker on his personal vehicle. (Doc. No. 56, at 2). Although the record does not indicate when the Defendants discovered that Eckerman was a Republican supporter, Plaintiff asserts that all of the Defendants knew that he was a Republican. (Doc. No. 64, at 6).

Before the inauguration of Democratic Governor Phil Bredesen in 2003, Eckerman held

---

[2] Eckerman supported former Governor Don Sundquist in 1994 and 1998, Van Hilleary in 2002, and Jim Ryson in 2006. (Doc. No. 56, at 2).

different leadership posts within the THP. He worked in the Special Operations Division from June 25, 1995 until February, 2003. Eckerman also headed the security detail of Republican Governor Don Sundquist during the 1994 gubernatorial election. Eckerman claims that the THP's political retaliation began at Governor Bredesen's inauguration in 2003. (Doc. No. 56, at 18) ("No dispute exists that prior to Governor Bredesen's inauguration, [Eckerman] was recognized as one of the most exceptional employees of the Department of Safety . . . . However, immediately after leading the security detail for Governor[ ] Bredesen's inauguration in [2003], [Eckerman] was [transferred to another] section of the Highway Patrol."). Nevertheless, despite being allegedly retaliated against for his political affiliation with the Republican Party, Eckerman led the security detail for two major Nashville events. Eckerman led the security detail for the 2003 inauguration of Democratic Governor Bredesen. And, for four months in 2005, he headed the security detail at the state capitol during the TennCare controversy, also during the tenure of Governor Bredesen.

Plaintiff's demotion in December 2006 is the only adverse employment action sufficient to support his retaliation claim. Yet, by Plaintiff's calculation Defendants knew of his political affiliation since at least 2003. Plaintiff received various leadership assignments, including the Bredesen inauguration and TennCare security details, after 2003 and before his demotion in December 2006. Thus, Plaintiff failed to show that his Republican Party affiliation, known to Defendants for three years, significantly motivated the demotion.

Eckerman also alleges that his previous federal lawsuit substantially motivated the demotion. On May 15, 2006, Eckerman filed a lawsuit under 42 U.S.C. §§ 1983 and 1985 claiming disparate treatment by the Department of Safety on the grounds of political affiliation. Eckerman stipulated to the dismissal of this suit, with prejudice, on December 4, 2007. In order to show a causal

connection between the protected activity and the adverse action, Eckerman must couple temporal proximity with other evidence that would suggest a retaliatory motive. Eckerman filed the federal lawsuit on May 15, 2006, more than six months before the recommendation to demote him on December 6, 2006. The lawsuit was not dismissed until almost a year after his demotion. The timing of the lawsuit gives rise to the possibility of a connection with the adverse employment action. However, as detailed in Nguyen, temporal proximity alone is not enough to prove causation. 229 F.3d at 566.

In addition to temporal proximity, Plaintiff asserts that Defendants' knowledge of his previous lawsuit precipitated the demotion. This temporal link plus knowledge could be sufficient to support a causal connection. See Weigel v. Baptist Hosp. of East Tennessee, 302 F.3d 367, 381 (6th Cir. 2002) ("a causal link may be shown through knowledge combined with closeness in time")(internal quotation omitted). Eckerman does not allege that Defendant Springer knew about the federal lawsuit at all, therefore causation fails as to him. (See Affidavit of Robert Eckerman, Doc. No. 60, at 4-5). For three of the other named Defendants, Eckerman states that he told each that he was planning to file a federal civil rights lawsuit. (See id. at 2, 3, 5). Knowledge of the possibility of a lawsuit is not the same as knowledge of an actual suit – this causal connection is tenuous at best. Eckerman asserts that Defendant Floyd knew of the lawsuit at the time of the trooper protocol interview. (See id. at 3). Eckerman also contends that two Defendants must have become aware of the previous lawsuit when Plaintiff filed a workplace harassment suit directly after the trooper protocol interviews in October 2006. (See id. at 3, 4). Eckerman does not allege when Defendant Wilson knew of the lawsuit, just that he did know sometime before the workplace harassment suit. (See id. at 4). This would give these four Defendants – Floyd, Dittforth, Hollis,

and Wilson – knowledge and perhaps create a genuine issue of causation sufficient to survive summary judgment.

However, even if Eckerman met the causation burden for these four or all of the Defendants, Defendants have presented enough evidence for a reasonable jury to conclude that the demotion would have occurred in the absence of Eckerman's political affiliation or filing of a federal lawsuit. Eckerman was one of several individuals interviewed during the protocol tampering investigation. (Doc. No. 60, Ex. H, at 3) ("The Department immediately began an investigation [of the protocol tampering incident] and investigated every employee whose name was mentioned. More than one employee who was interviewed mentioned that he or she had talked to Lt. Eckerman about the alleged Trooper Interview Protocol tampering."). Defendants Floyd and Hollis described Eckerman as being "confrontational and uncooperative" during the interview. (Doc. No. 60, Ex. J, at 1). Eckerman refused to identify the individuals who first notified him about problems with the protocols, even after being repeatedly asked. The following explanation was given as the reason for Eckerman's demotion:

> As a supervisor you are held to a higher standard and [because of] your reluctance to notify your supervisor about the allegations; your conducting an investigation into the allegations; and your failure to answer questions it is recommended you be demoted from your current rank of Lieutenant to Sergeant as disciplinary action. (Doc. No. 60, Ex. K, at 1).

THC demoted Eckerman because, as a supervisor, he was expected to notify the appropriate authority of the serious allegations that could diminish the public's confidence in the Department of Safety. Thus a reasonable jury could find that THC made the decision to demote Eckerman independent of his protected activities.

Once Defendants have shown an alternative cause, the burden then shifts to Eckerman to demonstrate pretext. See Lentz v. City of Cleveland, No. 07-4385, 2009 WL 1563433, at *4 (6th Cir. June 4, 2009) (citing Abbott v. Crown Motor Co., Inc., 348 F.3d 537, 542 (6th Cir. 2003) ("a plaintiff must respond to an employer's nonretaliatory reason by showing that the proffered reason was pretext for retaliation")). Eckerman has failed to offer such evidence. Therefore, even if Eckerman had established the causal connection element, the Defendants have presented enough evidence, not rebutted by Plaintiff, from which a reasonable jury could conclude that the demotion would have still occurred absent the protected activities. Thus, Eckerman has failed to prove retaliation. The Court therefore **GRANTS** Defendants' Motions for Summary Judgment.

*C. Qualified Immunity*

Defendants also assert qualified immunity for the claims against them in their individual capacities.[3] The doctrine of qualified immunity provides a shield against civil liability for government officials performing discretionary functions if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Riley v. Blough, No. 88-CV-73594-DT, 1989 U.S. Dist. LEXIS 18085, at * 2-3 (6th Cir. Aug. 11, 1989) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). To determine qualified immunity, the Court analyzes: (1) whether Plaintiff has established a violation of a constitutional right; (2) whether the violation "involved a clearly established constitutional right of which a reasonable person would have known;" and (3) whether Plaintiff proffered enough evidence "to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." Feathers v. Aey, 319 F.3d 843, 848 (6th Cir. 2003) (citing Williams v.

[3] The Tennessee Department of Safety is not sued in its individual capacity.

Mehra, 186 F.3d 685, 691 (6th Cir. 1999)). For the reasons articulated *supra*, Eckerman has failed to establish the violation of a constitutional right. Therefore the eight Defendants sued in their individual capacities are entitled to qualified immunity.

Additionally, Eckerman admits that Defendants Wilson and Springer had no role in the decision to demote him from lieutenant to sergeant. (Doc. 58, at 30). Therefore, Eckerman has failed to prove retaliation as to these Defendants. For this additional reason, Defendants Wilson and Springer are entitled to qualified immunity in this case.

*D. Sovereign Immunity*

Defendants also assert that all claims against them in their official capacities are barred by sovereign immunity under the Eleventh Amendment. The Eleventh Amendment bars all suits, whether for injunctive, declaratory, or monetary relief against the state and its departments, whether by its own citizens or citizens of another state. Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div., 987 F.2d 376, 381 (6th Cir. 1003). Therefore all claims against Defendant Tennessee Department of Safety are barred. See Alabama v. Pugh, 438 U.S. 781, 782 (1978) (finding that a claim for prospective relief against a state itself, or a state agency, is barred unless the State consents to suit). The Eleventh Amendment also bars an award of damages against a state, state agency, or state official sued in an official capacity. Edelman v. Jordan, 415 U.S. 651, 663 (1974). Therefore, Eckerman's claim of damages against the remaining Defendants as sued in their official capacity is barred by sovereign immunity.

However, after Ex Parte Young, the Eleventh Amendment does not bar a suit against a state official in his official capacity from enforcing a state law that violates the United States Constitution. 209 U.S. 123 (1908). While the Young doctrine "permits federal courts to enjoin

state officials to conform their conduct to requirements of federal law," Milliken v. Bradley, 433 U.S. 267, 289 (1977), it requires an inquiry into "whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." Verizon Md. Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 645 (2002) (quoting Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 296 (1997) (O'Connor, J., concurring)). Although he seeks prospective relief, Eckerman has failed to allege an on-going violation of federal law by state officials enforcing an unconstitutional state mandate. His Amended Complaint focuses on past alleged retaliatory employment decisions, not on-going harms. The Ex parte Young exception to sovereign immunity does not apply here. Even if Eckerman's claims as pled presented a genuine issue sufficient to survive summary judgment, sovereign immunity bars his claims against the Defendants in their official capacities.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motions for Summary Judgment are **GRANTED**. The case is **DISMISSED with prejudice**.

It is so ORDERED.

Entered this 28th day of August, 2009.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT



Case 3:07-cv-00627 Document 68 Filed 08/28/09 Page 19 of 19 PageID #: 1250